UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA COPENHAVER-NELSON,

    Plaintiff,

v.

Case No. 1:04-CV-777
Hon. Gordon J. Quist

PATRICIA CARUSO, CAROL HOWES,
RICHARD STAPLETON, JIM LYONS,
DAVID STOUGH, and ANNE SCOTT,

    Defendants.

_____/

### REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendants' motion to dismiss or for summary judgment (docket no. 19) and plaintiff's motion for summary judgment (docket no. 31).

    **I.**    **Plaintiff's complaint**

Plaintiff alleges that defendants have violated his First Amendment protection for his "legal mail," his Sixth Amendment right to "attorney-client privilege," his Fourteenth Amendment right to due process (by reading his legal mail and giving information to other litigants) and have committed "negligence/gross negligence." Compl. at p. 2. Plaintiff's claim arises from a Michigan Department of Corrections (MDOC), Policy Directive 05.03.118, "Prisoner Mail" which was revised on May 1, 2002 to delete the requirement that legal mail be opened in the prisoner's presence. Plaintiff claims that defendants illegally opened six pieces of his legal mail.[1] Compl. at p. 5. Plaintiff

---

[1] Plaintiff identifies the legal mail as correspondence received from: Attorney David R. Cook; Prison Legal Services Attorney Sandra Girard; United States District Court (Oct. 25, 2004); Oakland County

asks the court to enjoin defendants and their employees from opening his legal mail outside of his presence, to declare defendants' actions to have violated his constitutional rights, and to award him $5,000 for each claim and against each defendant. *Id.* *Id.* at p. 6.

## II.     The revision of Policy Directive 05.03.118

Prior to September 11, 2001, Policy Directive 05.03.118, ¶ AA provided that "[a] prisoner may have his/her incoming legal mail opened in his/her presence by submitting a written request . . ." The MDOC revised the prison mail policy in response to the terrorist activities of September 11, 2001 and the subsequent use of the mail to send anthrax and other suspicious materials. Caruso Aff. at ¶¶ 7-8. *See, e.g.,* MDOC Director's Memorandum (Oct. 24, 2001) (providing that "[s]ince all incoming mail now must be opened in one location and other special precautions may be taken when opening mail (e.g., protective gloves, particulate masks), legal mail to a prisoner will no longer be opened in the prisoner's presence under any circumstances"); MDOC Emergency Rules (Nov. 6, 2001) (providing that "[t]he practice of opening of legal mail in a prisoner's presence upon request of the prisoner is suspended").[2]

Effective May 1, 2002, Policy Directive 05.03.118 ¶ BB provided that legal mail would be opened and inspected with other prisoner mail:

> Incoming legal mail for a prisoner who has requested special handling of legal mail pursuant to Paragraph AA shall be opened and inspected for money, controlled substances and other physical contraband in the area of the facility designated to open all prisoner mail. The content of the mail shall not be read or skimmed. All physical

---

Probate Court (Nov. 3, 2004); Attorney Brian L. Mackie; and the 30th Judicial Circuit Court (Nov. 3, 2004). Compl. at p. 5. Plaintiff subsequently submitted copies of envelopes which allegedly contained legal mail opened by defendants outside of his presence. *See* Order (April 1, 2005).

[2] Both the Director's Memorandum and the Emergency Rules are attached as exhibits to the affidavit of Richard Stapleton (docket no. 19).

contraband shall be confiscated and the mail sealed prior to delivery to the prisoner. It is sufficient to return the mail to its original envelope and staple or tape the envelope shut.  If it is placed in another sealed envelope prior to delivery, it shall be noted on the envelope that it is legal mail for the prisoner and is not be reopened prior to delivery to the prisoner.

On May 2, 2002, this court entered an Order approving a stipulation regarding the implementation of the MDOC's revised legal mail policy in *Hadix v. Johnson*, No. 4:92-cv-110 (W.D. Mich.) (docket no. 1619) and *Knop v. Johnson*, No. 1:84-cv-651 (W.D. Mich.) (docket no. 1591).  The stipulation provided as follows:

> 1. Plaintiffs have no objection to the implementation of Michigan Department of Corrections revised Policy Directive No. 05.03.118, "Prisoner Mail," effective May 1, 2002.
>
> 2. This stipulation resolves the defendants' motion to relieve compliance with Section VI-10 of the consent decree and the court's May 5, 1988 opinion and order in [*Hadix* and *Knop*], and plaintiffs' motion for order to show cause and for order enjoining defendants' changes to the legal mail policy, dated November 5, 2001 [in *Hadix* and *Knop*].

*See Hadix* (docket no. 1617); *Knop* (docket no. 1591).

Under the versions of Policy Directive 05.03.118 in effect from May 1, 2002 to June 6, 2005, incoming legal mail for a prisoner who requested special handling of legal mail was required to be opened and inspected for contraband in the prison mail room. *See Courtney v. Caruso*, No. 4:05-cv-83, 2005 WL 2671283 at *1 (W.D. Mich. Oct. 19, 2005).  The policy also required that the mail not be read or skimmed and that it be securely re-sealed before being delivered to the prisoner. *Id.*

This court revisited Policy Directive 05.03.118 in *Donald Mallory-Bey v. Michigan Department of Corrections et al.*, No. 1:04-cv-137 (W.D.Mich.). In an amended judgment in *Mallory-Bey* (entered August 19, 2005, *nunc pro tunc* and effective April 15, 2005), this court "immediately and permanently enjoined" the MDOC "from opening (outside the prisoner's presence) the legal mail of any prisoner who properly requests, or has previously requested, that his or her legal mail be opened only in his or her presence." *Mallory-Bey*, Amended Judgment at p. 4. The court's injunction was consistent with the Sixth Circuit's opinion in *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003), which found that a prisoner had the right to be present when his legal mail is opened, stating that "[t]here is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise." *Sallier*, 343 F.3d at 877-78. As a result of the order entered in *Mallory-Bey*, the MDOC revised the Mail Policy such that incoming legal mail for a prisoner who has requested special handling of legal mail must be opened in the prisoner's presence. *See* Policy Directive 05.03.118, ¶ EE (effective June 6, 2005); *Courtney*, No. 4:05-cv-83, 2005 WL 2671283 at *1.[3]

### III.    Plaintiff's claims for injunctive and declaratory relief

Plaintiff filed this suit on November 19, 2004. Since that time, this court entered an order effective April 15, 2005 which enjoined the MDOC from opening legal mail outside of the

---

[3]In reaching this determination in *Mallory-Bey*, the court rejected three claims asserted by defendants in the present action. The first claim was that the stipulation in *Hadix* and *Knop* resolved the issue regarding inspection of legal mail under Policy Directive 05-03-118 and barred the prisoner's claim pursuant to the doctrine of *res judicata*. The second claim was that the stipulation barred the prisoner's claim pursuant to the doctrine of collateral estoppel. The third claim was that the Sixth Circuit's decision in *Sallier* was not controlling law regarding a prisoner's right to be present during the opening of legal mail. Accordingly, the court will not address these issues.

4

prisoner's presence and the MDOC revised its prisoner mail policy to comply with this order. The injunction and revised policy have given plaintiff the declaratory and injunctive relief he seeks in the present case, rendering his request for relief moot. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986). Accordingly, plaintiff's claims for declaratory and injunctive relief should be denied as moot.

### IV. Motion to dismiss claims against defendants Lyons, Scott and Stough

#### A. Standard of review for motion to dismiss

Under Fed. Rules Civ. Proc. 12(b)(6), a complaint may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under

5

color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 27 (1994).

### B. Defendant Lyons

Plaintiff alleges that Jim Lyons "did knowingly advise defendants Howes, Stough and Scott, in an erroneous fashion, to violate a court order, to permit the violation of the plaintiff's constitutional rights, in his capacity, as the Litigation Coordinator for the Crane facility." Compl. at ¶ 2. Defendants contend that plaintiff's allegations are too vague to state a cause of action.

Plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rules Civ. Proc. 8(a)(2). While the court is well aware that *pro se* complaints require less stringent reading than those drafted by attorneys, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty to be "less stringent" with *pro se* complaints does not require this court to conjure up unpleaded allegations. *Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 437 (6th Cir. 1988); *McDonald v. Hall*, 610 F.2d 16 (1st Cir. 1979). A plaintiff must allege with at least some degree of particularity the acts which constitute the violation of his rights. *See Morgan*, 829 F.2d at 12; *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

Although plaintiff does not identify the "court order" at issue, a broad reading of his complaint suggests that he is referring to the Sixth Circuit decision in *Sallier*. *See* Compl. at ¶ III (A). Even if the court assumes that defendant Lyons allegedly advised defendants Howes, Stough or Scott to violate *Sallier*, plaintiff's conclusory allegations do not indicate the nature of this advice

6

or how this advice led to a violation of his constitutional rights. It is insufficient for plaintiff to simply state that Lyons erroneously advised other prison officials in a manner that permitted the other officials to violate plaintiff's constitutional rights. Accordingly, defendant Lyons' motion to dismiss should be granted.

### C. Defendant Scott

Similarly, the only allegation against defendant Anne Scott, grievance coordinator at Crane, is that defendant Lyons advised her to violate a court order, which in turn violated plaintiff's constitutional rights. *Id.* at ¶ 2. Plaintiff does not allege that defendant Scott performed a wrongful act or did anything other than receive advice from another defendant. In his response to defendants' motions, plaintiff states that Scott denied his grievances at Step I and Step II. Defendant Scott denied plaintiff's grievance because he stated a non-grievable issue, i.e., contesting the content of policy/procedure. *See* Grievance ACF 2004 10 0673 27B, Response 10/18/04, attached to Compl. Scott's denial of plaintiff's grievance did not violate his constitutional rights. "Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance." *Lee v. Michigan Parole Board*, 104 Fed. Appx. 490, 493 (6th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, defendant Scott's motion to dismiss should be granted.

### D. Defendant Stough

Next, plaintiff alleges that defendant David Stough "as Records/Mail Supervisor is directly responsible for all mail operations, for the Crane Correctional Facility." Compl. at ¶ 4. Plaintiff is attempting to sue defendant Stough based upon his position as the mail supervisor, presumably because unnamed "mail operations" employees opened plaintiff's legal mail outside of

plaintiff's presence. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* Plaintiff's bare allegation, that defendant Stough supervised mail operations, is insufficient to state a cause of action against him for violating plaintiff's constitutional rights. Accordingly, defendant Stough's motion to dismiss should be granted.

> **V.   Motion for summary judgment as to defendants Caruso, Stapleton and Howe**
>
> **A.   Standard of review for summary judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Defendants Caruso and Stapleton

In his complaint, plaintiff variously identifies defendants as "employees, policy makers or assignees for implementation of policy utilized," that they "are therefore being prosecuted within this action, in their respective personal capacities," that they are "professionally and personally culpable for their actions regarding the legal mail of plaintiff, directly or indirectly through their respective promulgation of policy directives, administrative rules, operating procedures, (DOM) Director's Office Memorandums [sic], and other [sic] designed to further impede the constitutional rights of the Plaintiff." Compl. at pp. 1-3.  Plaintiff alleges that MDOC Director Patricia Caruso and MDOC Administrator of the Office of Policy and Hearings Richard Stapleton, enacted policies that violated his First Amendment rights in 2002 and 2003.  Compl. at p.4.  Plaintiff further alleges that Director Caruso and Administrator Stapleton "are the primary oracles for the creation of departmental policy, and as such they have acted to violate the First Amendment rights of the plaintiff, by enacting policy that permits the opening of qualified 'legal mail' outside of the present of the plaintiff, when the opt-in request had been made, at the G. Robert Cotton facility in 2002, and the Muskegon Correctional Facility in 2003."  *Id.*

While plaintiff's complaint purports to sue Director Caruso and Administrator Stapleton both "professionally and personally," his specific allegations against these two defendants arise from their creation of departmental policy.  To use plaintiff's words, Director Caruso and Administrator Stapleton are the "primary oracles" for "enacting policy." Plaintiff does not allege that

9

either Director Caruso or Administrator Stapleton had personal involvement in opening his legal mail. Rather, plaintiff's complaint is directed at these two defendants in their official capacities as MDOC administrators responsible for formulating and drafting Policy Directive 05.03.118. *See Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1012 (N.D. Ohio 2004) (state's director of department of corrections was being sued in his official capacity, rather than his individual capacity, where prisoner alleged that director "implemented or promulgated rules and policies" causing him harm).

Because plaintiff is seeks monetary damages from Director Caruso and Administrator Stapleton in their official capacities as state officials promulgating rules, his monetary claims against them are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, defendants' motion for summary judgment should be granted with respect to both Director Caruso and Administrator Stapleton.

### C. Defendant Howes

Finally, plaintiff alleges that defendant Carole Howes, the warden at the Crane Correctional Facility, "is liable for the violative acts of her employees," and that "she did affirm that her staff was permitted to open the legal mail outside the presence of plaintiff, despite a [c]ourt order to the contrary." *Id.* at ¶ 3.

Plaintiff cannot base his § 1983 action on a theory of respondeat superior. *See Monell*, 436 U.S. at 691; *Taylor*, 69 F.3d at 80-81. In her affidavit, Warden Howes states that her Step II grievance response affirmed that MDOC policy had changed. She further states, however, that she had no involvement in creating or adopting the policy. Howes Aff. at ¶¶ 1-5. While

Warden Howes' grievance response acknowledged that the Policy Directive had been changed, her response did not show that she participated in the opening of plaintiff's mail or that she authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of the offending subordinate. *Bellamy*, 729 F.2d at 421. As previously discussed, plaintiff cannot base § 1983 liability upon the denial of a grievance or a supervisory official's failure to act based upon information contained in a grievance. *Lee*, 104 Fed. Appx. at 493; *Shehee*, 199 F.3d at 300. "The mere fact that [Warden Howes] occupied a position of authority, or that [she] may have been aware of illegal conduct by subordinates after the fact, does not justify the imposition of § 1983 liability." *Kubik v. Brown*, 979 F. Supp. 539, 548 (W.D. Mich. 1997), *citing Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Accordingly, defendant Howes' motion for summary judgment should be granted.[4]

### VI. Plaintiff's motion for summary judgment

In his motion for summary judgment (docket no. 31), plaintiff contends that "defendants' actions have been found culpable" based upon the court's April 15, 2005 order entered in *Mallory-Bey*. As the court previously discussed, plaintiff's claims for declaratory and injunctive relief have been rendered moot and his claims for monetary relief are without merit. Accordingly, plaintiff is not entitled to summary judgment on his federal claims.

---

[4] Defendants did not raise a qualified immunity defense. Nevertheless, it appears to the court that such a defense may well apply to all defendants in this case. Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court's approval of the stipulation in the *Haddix* and *Knop* cases, which implemented Policy Directive 05.03.118 as revised on May 1, 2002, may have led a reasonable person to believe that the revised legal mail policy did not violate the prisoner's statutory or constitutional rights.

11

### VII. State law claims

The remainder of plaintiff's claims against defendants involve alleged violations of Michigan state law (i.e., "negligence/gross negligence"). Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims, presumably because those claims were intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claim against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against this defendant. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the court should dismiss all of the state law claims asserted against defendants.

## VIII.  RECOMMENDATION

Accordingly, I respectfully recommend that defendants' motion to dismiss or for summary judgment (docket no. 19) be **GRANTED** and that plaintiff's motion for summary judgment (docket no. 31) be **DENIED**.


Dated:  January 25, 2006                         /s/ Hugh W. Brenneman, Jr.
                                                Hugh W. Brenneman, Jr.
                                                United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).